22 C. C. P. A. (Patents)

### In re RICHARDSON.

#### Patent Appeal No. 3506.

Court of Customs and Patent Appeals.
June 3, 1935.

Ellis S. Middleton, of New York City, and William P. Spielman, of Washington, D. C., for appellant.

T. A. Hostetler, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

GARRETT, Associate Judge.

The application here involved relates to "Thermal Decomposition of Hydrocarbons." All the claims were rejected by the Examiner of the United States Patent Office. Upon appeal, the Board of Appeals reversed the decision of the Examiner as to claims numbered 2 and 11, but affirmed as to all others. From so much of the Board's decision as affirmed, Richardson appeals to this court.

The claims before us are numbered 4, 5, 6, 7, 8, 9, and 12. All are process claims. Claims 4 and 8 are illustrative of the subject-matter:

"(4) A process for decomposing hydrocarbons at high temperatures which comprises preheating and partially decomposing the hydrocarbons while passing upwardly through a heated refractory mass, then completing the decomposition by passing the same in the same vertical direction in contact with more highly heated refractory material, and recovering the sensible heat of the decomposed mixture by passing the latter downwardly through a relatively colder refractory mass."

"(8) A process for producing a nitrogen-hydrogen mixture for ammonia synthesis which comprises passing a mixture of methane and steam upwardly through a reaction zone of gradually increasing temperatures, and then passing same downwardly through a reaction zone of gradually decreasing temperatures while admitting a mixture of oxygen and nitrogen to the gas mixture."

Claims 5, 6, and 7 are the same, except in phraseology, as claim 4. It will be observed that claim 8 has a limitation which reads: " * * * Passing a mixture of methane and steam upwardly through a reaction zone of gradually increasing temperatures." This appears in claim 9 also, and substantially in claim 12, except that in the latter claim the ingredients of the mixture to be passed upwardly through a reaction zone are defined by other terms, being given as "hydrocarbon gases with water vapor."

The Examiner denied patentability in view of prior art, and cited two patents, viz.: Snyder, 1,781,935, November 18, 1930; Vinther, 1,817,726, August 4, 1931.

Of these the Examiner relied principally, indeed it seems wholly, upon Snyder. The Board expressly held, as to the claims allowed by it, that Snyder was not applicable. Its relation to the rejected claims and the Board's holding thereon will be later discussed.

For the practice of his process, appellant discloses an apparatus having two vertical chambers connected at the top by a passage through which the gases engendered in one chamber pass to the other chamber. The specification recites that each chamber is heavily insulated and that each is about two-thirds filled with broken fire bricks, or a checker work of brick, with a mass of broken high temperature refractory material superimposed directly upon the brick material so that the chambers are filled to their respective tops.

Leading into each chamber at its lower extremity there is a valve-controlled pipe. Dependent upon the order in which the process is carried out, one of these pipes serves for the introduction of the mixture to be decomposed, together with air, and the other serves for the withdrawal of the products of combustion during the heating period. There is also a small valve-controlled pipe entering near the top of each chamber for the admission of air during the cracking period and gas during the heating period.

Either chamber may be utilized as a primary chamber. In operation the refractory material at the top is heated to 1200° to 1500°C. by burning gas and air, and the brick work is also heated to a temperature, the degree of which is not specified but which is evidently below that of the top refractory material. The mixture to be decomposed, consisting of methane having three volumes of steam added, being introduced, for example, into the left-hand chamber, passes upwardly through the fire brick, being heated thereby, thence through the highly heated refractory, thence through the passage to the right-hand chamber, thence downwardly through the refractory, "where it is decomposed to carbon, carbon oxides, and hydrogen." The gases so decomposed then pass on downwardly through the fire brick in the second chamber, "giving their sensible heat to the bricks," and are withdrawn through the pipe at the bottom. The specification teaches that air may be introduced through the bottom pipe "in such proportion that after subsequent treatment and purification the gas produced will contain one part nitrogen to three parts hydrogen."

It will be observed from the foregoing that appellant's process requires the passing

of the gases upwardly through a heated element into and through a more highly heated element and then downwardly through a highly heated element into and through a lesser heated element.

The Snyder patent discloses an apparatus for the production of hydrogen in which the gas to be decomposed is progressively heated to a temperature above its decomposition temperature and then progressively cooled, but his entire process takes place in ·a single chamber, the gases passing in a single direction, both for heating and cooling, his heating element of highest temperature being in the center of his chamber.

As has been stated, the Examiner was of opinion that all the claims were rejectable upon Snyder, saying that "the process of this application duplicates the Snyder process, except that the applicant has cut, as it were, the vertical chamber of Snyder's patent through the center and made it into two interconnected vertical chambers. The process remains the same."

The Board of Appeals, however, found that the Snyder patent made no suggestion of such a change, and said: "We are not convinced that it would be obvious." Accordingly the Board allowed claims 2 and 11.

Since each of the claims on appeal requires the same "upwardly" and "downwardly" flow of gases which is required by allowed claims 2 and 12, it would seem that the reasoning applied to the latter claims, as to this feature, is equally applicable to those rejected, and, since this seems to have been the only feature upon which Snyder was cited, it is our conclusion that we must regard the Snyder patent as having been eliminated as a reference.

Neither tribunal of the Patent Office, in the opinions of record, made any analysis of the Vinther patent. The examiner merely referred to it in his statement as "Another pertinent reference," while the Board only said: "We believe that claims 2 and 11 fairly define appellant's contribution but none of the other claims sets forth an increasingly heated refractory mass or material and the heating means of these claims might well be independently supported much in the manner disclosed by Vinther, in which case it would be immaterial whether the hotter portion of the heating means is above or below the cooler portion. Snyder's arrangement, if the zones were separately supported, would apparently be as effective as appellant's."

It might seem from the last-quoted sentence that some reliance was placed by the Board upon Snyder as to the feature of supports for the refractory heating means, but, in view of the clause "if the zones were separately supported," we think it was not so intended. At any rate, Snyder's zones are not separately supported.

Returning to the Vinther patent, the brief of the Solicitor for the Patent Office before us gives the following respecting its showing: "The patent to Vinther, 1817726, relates to method of producing hydrogen and apparatus therefor and discloses an apparatus including two receptacles 1, 13, each with sections of refractory material, which are heated. There are also two regenerators 35, 36 filled with refractory material which is heated. By means of the pipes and valves shown, gases can be sent in various paths through the heated refractories. Mention is made of 'attainment of higher temperature in 1 than was obtained in receptacle 13.'"

We have carefully examined the Vinther patent. We do not find therein any teaching which seems to us to parallel appellant's teaching respecting the passing of gases upwardly and downwardly through zones of respectively increasing and decreasing temperatures as hereinabove described in detail. As to the supporting of the heating means, or refractory, Vinther makes no teaching whatever. For that the drawing must be examined. This shows a series of refractory zones spaced apart in two separate ·towers, whereas appellant's refractory, the hottest of his elements, rests directly upon the brick work.

The Board seems clearly to have been in error in the statement that none of the rejected claims "sets forth an increasingly heated refractory mass or material." Claims 8 and 9, as has been pointed out, speak of "a reaction zone of gradually increasing temperatures," and claim 12 of "a zone of increasing temperature."

Upon the whole, we feel convinced that appellant has distinguished from the art cited against his application in a manner which entitles him to the benefit of the patent laws, as to all the claims.

The decision of the Board of Appeals as to the rejected claims is therefore reversed.

Reversed.